## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-cr-30035** |
| | ) | |
| **DONALD R. FELTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Defendant Donald R. Felton is charged with possession of 50 or more grams of methamphetamine with intent to distribute. Defendant has filed a Motion to Suppress Evidence (d/e 36) in which Defendant argues that police violated his Fourth Amendment right to be free from unreasonable searches by installing a tracking device on his girlfriend's vehicle without a valid warrant. Defendant requests that the Court suppress the methamphetamine seized as a result of the assertedly illegal search or, in the alternative, grant Defendant a hearing under Franks v. Delaware, 438 U.S. 154 (1978). For the reasons set forth below, Defendant's motion is DENIED.

# I. BACKGROUND

On May 23, 2019, Inspector Jeffrey Brown of the Illinois State Police appeared before Judge Brad Paisley of the Circuit Court of Christian County, Illinois and submitted a Complaint for Search Warrant requesting authorization for the placement of a tracking device on a white Mazda SUV (the "Mazda") with a specified vehicle identification number and Illinois license plate number P764768. See d/e 42, p. 1.

## A.    The Warrant Affidavit

The affidavit submitted in support of Inspector Brown's warrant application (the "warrant affidavit") states that Illinois State Police conducted an interview with a confidential source (the "CS") on May 21, 2019.  The CS had "provided information which has proven to be reliable on a number of occasions" in the past and also had "a criminal history with a felony conviction for burglary." Id., p. 2. The CS advised police that "Donald Felton is traveling to the St. Louis, Mo. Area to purchase ICE methamphetamine" and further specified that Defendant had taken "several" trips to the St. Louis area, the most recent of which had taken place approximately two weeks before the May 21, 2019 interview. Id.  According to the CS,

Defendant was driving his girlfriend's white SUV to make the trips to the St. Louis area, purchasing "2 or 3 ounces" of methamphetamine during each trip, and transporting the methamphetamine back to Taylorville, Illinois to be sold.  Id.  The CS further informed police that Felton had been "pulled over by police on IL. Rt. 48" on one such trip, that the police found a starter pistol in the vehicle during the stop, and that after the stop Defendant decided not to continue his trip and did not purchase methamphetamine.  Id.

The warrant affidavit also states that, on April 24, 2017, about two years prior to the CS's interview with police, Inspector Brown accompanied probation officers from the Christian County Probation Office on a home visit to the residence where Defendant lived with Kourtneigh S. Oats.  Methamphetamine was found in the residence, as well as a digital scale and a number of sandwich bags with the corners removed.  As of the date of the warrant affidavit, Defendant was awaiting trial on charges related to that 2017 visit. Defendant was previously convicted of felony possession of methamphetamine in Christian County in 2015.

The warrant affidavit further states that on May 16, 2019,

Inspector Brown drove past Defendant's residence at 927 W. Poplar St. in Taylorville, Illinois and observed a white Mazda SUV with Illinois license plate number P76768[1] in the driveway.  Id. Inspector Brown checked the plate against the Illinois Secretary of State's records and found that the vehicle was a 2013 Mazda registered to Kourtneigh S. Oats, address 927 W. Poplar St.  Later, Inspector Brown reviewed a call log kept by the Christian County Sheriff's Office and found that Deputy Goebel had "made a traffic stop" on the SUV in question at 10:37 p.m. on April 21, 2019, on Illinois Route 48 near Spresser Street.  Id.

The warrant affidavit also states that on May 22, 2019, the day after police interviewed the CS and the day before Inspector Brown requested and obtained the tracking device warrant from Judge Brad Paisley, Inspector Brown spoke with Deputy Goebel. Deputy Goebel stated that Defendant was driving the Mazda southbound on Illinois Route 48 when Deputy Goebel pulled him over.  Deputy Goebel further stated that, upon being pulled over,

---

[1] Elsewhere in the warrant affidavit, the warrant itself, and the Government's briefs, the license plate number provided for the white Mazda SUV owned by Kourtneigh Oats is given as "P764768".  The omission of the "4" from the number observed by Inspector Brown in the driveway of 927 W. Poplar appears to be a typographical error in the warrant affidavit.

Defendant told Deputy Goebel that Defendant was driving to Mattoon, Illinois, to purchase a smoker (i.e., a cooking appliance for smoking meat). According to Deputy Goebel, Defendant had "a wad" of approximately $2,000 in cash in the vehicle as well as "what appeared to be a firearm but turned out to be a handgun that only shot blanks." Id., pp. 2–3.

### B.   Defendant Asserts That the Warrant Affidavit Contains a Number of Falsehoods and Omissions.

Defendant asserts that the warrant affidavit contains a number of falsehoods and omissions. The warrant affidavit states that the CS, Deputy Goebel, and a Christian County Sheriff's Office call log all specified that Deputy Goebel performed a "traffic stop" on Defendant while Defendant was driving. According to Defendant, however, other records from the Sheriff's Office "seemingly" show that Defendant was not pulled over but rather was already parked at the side of the highway when Deputy Goebel approached him. D/e 46, p. 10. The Christian County Sheriff's Office "End of Month Report" provided by Defendant does classify the encounter as a "DISABLED/ABANDONED" vehicle incident rather than a "traffic stop." See d/e 46–2, p. 5.

Defendant also asserts that information that would have been relevant to Judge Paisley's evaluation of the CS's credibility was omitted from the warrant affidavit. The Government concedes that Inspector Brown omitted some relevant information that "should have" been included, including additional information regarding the CS's motive for cooperating with police and the CS's criminal history. D/e 41, p. 14.

According to the Government's Response (d/e 41) to Defendant's Motion, the CS was rewarded with cash payments and "consideration in the prosecution of the CS' friends." Id. In a supplemental affidavit filed along with the Government's Response, Inspector Brown states that the CS was paid $345 in cash on June 19, 2019. D/e 43, ¶ 13. Inspector Brown also states in his supplemental affidavit that the CS "may have assumed" that the CS would also receive favorable treatment from police regarding 0.6 grams of methamphetamine that police found in the CS's residence around the time the CS was interviewed regarding Defendant Felton. Id.

The original warrant affidavit also omitted certain facts regarding the CS's criminal history, including a number of

misdemeanor convictions and arrests and one felony charge for possession of less than 5 grams of methamphetamine that was pending when the warrant affidavit was submitted.

### C.   A Warrant Was Issued Based on the Warrant Affidavit, and Defendant Was Tracked and Arrested.

Judge Paisley issued the requested tracking device warrant on May 23, 2019.   The warrant authorized police to install a tracking device on the Mazda and to monitor the location of the vehicle for a period of 60 days.  Thirteen days later, at approximately 3:00 a.m. on June 5, 2019, Inspector Brown executed the warrant by placing an electronic tracking device on the Mazda.  On June 8, 2019, police observed that the tracking device was leaving Taylorville and followed the vehicle to Madison County, Illinois, where the vehicle made stops at a truck stop and a rest area.  When the Mazda returned to Christian County, Inspector Brown arranged for a Taylorville Police K-9 unit to effect a traffic stop on the vehicle, which was being driven by Defendant.  After the dog alerted to the presence of narcotics, police searched the Mazda and discovered a plastic bag containing a substance that tested positive for methamphetamine.

On June 10, 2019, a Complaint (d/e 1) was filed in this Court and an arrest warrant for Defendant was issued.  Defendant was detained pending trial and on July 19, 2019, an Indictment was filed charging Defendant with possession of 50 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii).  On February 3, 2021, Defendant, who was represented by counsel, filed a pro se motion to suppress the evidence seized as a result of the tracking device warrant issued by Judge Paisley.  See d/e 32.  The Court struck Defendant's pro se motion on February 5, 2021.  See Text Order entered February 5, 2021; Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999) ("A district court is entitled to insist that a represented party file papers only through counsel.").

On April 23, 2021, Defendant filed, through counsel, the instant Motion to Suppress Evidence.  See d/e 36.  Defendant argues that the tracking device warrant was void at the time of execution because the delay of 13 days between issuance and execution of the warrant violated state and federal law.  Defendant further argues that the warrant was not supported by probable cause and that the good faith exception of United States v. Leon,

468 U.S. 897 (1984), does not apply.  For these reasons, Defendant requests that the Court apply the exclusionary rule and suppress the controlled substance seized from the Mazda by police.  In the alternative, Defendant requests an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), to determine whether police intentionally or recklessly made materially false statements in the warrant affidavit.  Defendant also requests a non-Franks evidentiary hearing to "further develop facts."  D/e 36, p. 36.

The Government filed a Response to Defendant's Motion on May 18, 2021.  See d/e 41.  The Government argues that Defendant's Motion should be denied because the installation of the tracking device warrant was not a search under the Fourth Amendment, because the warrant was in fact supported by probable cause, and because police were entitled to rely on the warrant in good faith even if the warrant was invalid. On June 17, 2021, Defendant filed a Reply brief in support of his Motion.  See d/e 46.  The Government and Defendant have also each filed a Notice of Additional Authority highlighting relevant caselaw not included in earlier briefs.  See d/e 47, 52.

## II. ANALYSIS

**A.  The Lapse of 13 Days Between Issuance and Execution of the Warrant Did Not Render the Warrant Invalid.**

Defendant suggests two potential limitation periods governing the execution of the search warrant at issue.  According to Defendant, one of these time limits is imposed by Illinois statutory and common law and the other is imposed by the Federal Rules of Criminal Procedure.  Defendant argues that law enforcement's failure to execute the warrant within either of these limitation periods rendered the warrant invalid at the time of execution. However, neither of the time limits discussed in Defendant's Motion affects the constitutionality of the challenged search.  Accordingly, the lapse of 13 days between issuance and execution of the warrant does not automatically trigger the exclusionary rule.

### 1.  <u>The Exclusionary Rule Does Not Apply When Only State Law Has Been Violated.</u>

The Illinois Code of Criminal Procedure states that a warrant "shall be executed within 96 hours from the time of issuance" and that "any warrant not executed within such time shall be void and shall be returned to the court of the judge issuing the same as 'not executed.'"  725 ILCS 5/108-6; <u>see</u> People v. Shinohara, 872 N.E.2d

498, 516 (Ill. App. Ct. 2007) (discussing scope of the "96-hour rule").

However, violations of state law do not invalidate a warrant for Fourth Amendment purposes.  See United States v. Brewer, 915 F.3d 408, 414 (7th Cir. 2019).  In United States v. Brewer, 915 F.3d 408 (7th Cir. 2019), law enforcement relied on a warrant issued by an Indiana state court to install a GPS tracking device on the defendant's vehicle.  Id. at 412.  The warrant authorized monitoring only "in Indiana," but law enforcement monitored the defendant on a trip to California, in violation of the terms of the warrant and Indiana state law.  Id.  The Seventh Circuit affirmed the denial of the defendant's motion to suppress, holding that "state law does not by proxy heighten the Fourth Amendment's protections."  Id. at 414.  Defendant's motion to suppress invokes the federal exclusionary rule, which is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect."  United States v. Calandra, 414 U.S. 338, 354 (1974).  The exclusionary rule does not operate to safeguard rights created by state laws or state court decisions.

## 2.  There Is No Federal "10-Day Rule" Governing the Execution of Tracking Device Warrants.

Defendant asserts that federal courts are "governed by a 10-day rule" which operates to exclude evidence gathered pursuant to a tracking-device warrant where the installation authorized by the warrant is not completed within 10 days.  Rule 41(e)(2)(C)(i) of the Federal Rules of Criminal Procedure does state that a tracking-device warrant must command the executing officer to "complete any installation authorized by the warrant within a specified time no longer than 10 days."  Fed. R. Crim. P. 41(e)(2)(C)(i).  The warrant in this case did not contain any such command.  See d/e 42, pp. 4–5.  While the warrant states that the identified automobile may be tracked and monitored "for a period of sixty (60) days" before a new warrant is required,[2] the warrant does not explicitly state any time limit regarding installation.  Id.

However, Rule 41's requirements do not apply to a warrant issued by a state judge to state officials.  See United States v. Trost,

---

[2] This 60-day time limit is longer than the 45-day period for tracking authorized by Fed. R. Crim. P. 41(e)(2)(C).  However, for the reasons discussed infra, Rule 41's requirements do not apply to warrants issued by state court judges to state officials.  Furthermore, the challenged installation and tracking in this case were completed within 45 days of the warrant's issuance.  Accordingly, the fact that the warrant authorized more than 45 days of tracking is not relevant to the Court's determination of Defendant's Motion to Suppress.

152 F.3d 715, 722 (7th Cir. 1998).   The challenged warrant in this case was issued by an Illinois state court judge and executed by state and local police.  The fact that state law enforcement officers' investigation led to federal charges does not mean that the Illinois State Police were required to obtain a warrant that complied with the requirements of the Federal Rules of Criminal Procedure.

Moreover, "technical defects" in a warrant "do not call for or permit exclusion of what the search produces."  Id. (quoting United States v. Hornick, 815 F.2d 1156, 1158 (7th Cir. 1987)).  The Seventh Circuit has stated that "it is difficult to anticipate any violation of Rule 41, short of a defect that also offends the Warrant Clause of the fourth amendment, that would call for suppression. Many remedies may be appropriate for deliberate violations of the rules, but freedom for the offender is not among them."  Id.

In addition to Rule 41, Defendant also cites United States v. Jones, 565 U.S. 400 (2012), as authority for the federal "10-day rule" for the installation of tracking devices.  In Jones, the Government obtained a warrant to install a tracking device on the defendant's car and the terms of the warrant authorized installation within 10 days and in the District of Columbia.  Id. at 402–03.  The

Government installed the device on the 11th day in Maryland.  Id.
at 403.  When the defendant in Jones moved to suppress evidence
from the use of the device, the Government argued "only that a
warrant was not required" rather than arguing that law
enforcement's failure to abide by the terms of the warrant did not
render the search warrantless.  Id. at 403 n.1.  Because the
Government there conceded that the challenged search was
warrantless, the issue of the warrant's validity was not before the
Supreme Court.  See id. at 430 n.11 ("In the courts below the
Government did not argue, and has not argued here, that the
Fourth Amendment does not impose these precise restrictions and
that the violation of these restrictions does not demand the
suppression of evidence obtained using the tracking device.
Because it was not raised, that question is not before us.") (Alito, J.,
concurring).  Therefore, the Jones Court did not hold that failure to
execute a warrant within ten days invalidates the warrant.

No bright line rule operates to automatically void an
unexecuted warrant for purposes of Fourth Amendment analysis
after the lapse of some specific number of days or hours.  See
United States v. Sutton, 742 F.3d 770, 774 (7th Cir. 2014)

(affirming denial of motion to suppress where the defendant asserted that information more than 72 hours old was too stale to give rise to probable cause and holding that "there is no bright line rule for determining staleness").  Nonetheless, the age of the inculpatory information relied on by police when seeking a warrant is one of the primary factors used to determine the existence of probable cause.  United States v. Spry, 190 F.3d 829, 836 (7th Cir. 1999); see United States v. Bradford, 905 F.3d 497, 504 (7th Cir. 2018) (weighing age or "staleness" of informant's information alongside the other probable cause factors).  Accordingly, the lapse of time between issuance and execution of the warrant is a factor in the Court's probable cause analysis.

**B.    The Court Will Not Consider Any Information Introduced in Inspector Brown's Supplemental Affidavit that Tends to Support Probable Cause**

Inspector Brown has submitted a supplemental affidavit (d/e 43) in support of the Government's Response to Defendant's Motion to Suppress.  This supplemental affidavit admits that Inspector Brown omitted some relevant information regarding the CS's credibility from the warrant affidavit, specifies what information was omitted, offers an explanation for why the

information was omitted, and provides additional information supporting the CS's credibility including a detailed history of the CS's past cooperation with police.  Defendant objects to the introduction of new evidence to "explain the discrepancies identified by the defense" if Defendant is not given "a full opportunity to challenge or rebut this evidence" in a <u>Franks</u> hearing.  D/e 46, p. 12.

Defendant is correct that not all of the information in Inspector Brown's supplemental affidavit can be considered at this time.  Pursuant to <u>United States v. Harris</u>, 464 F.3d 733 (7th Cir. 2006), the Government may not, prior to a <u>Franks</u> hearing, "bolster the magistrate's probable cause determination through post-hoc filings" such as supplemental affidavits explaining or excusing omissions from the initial warrant affidavit.  <u>Id.</u> at 739.  Until Defendant has had an opportunity for cross-examination, the Court can consider newly introduced facts that militate against a finding of probable cause but cannot consider new facts or assertions that support probable cause.  <u>United States v. McMurtrey</u>, 704 F.3d 502, 510 (7th Cir. 2013).

Therefore, in deciding Defendant's Motion to Suppress, the

Court will consider the statements in Inspector Brown's affidavit that favor Defendant but will not consider any statement favorable to the Government's position. The Court will consider Inspector Brown's admissions regarding the CS's compensation and criminal history, as these admissions prove that relevant information was omitted from the warrant affidavit. The Court will not consider Inspector Brown's stated reasons for omitting information relevant to the CS's credibility and will also not consider the supplemental affidavit's list of past cases in which the CS provided reliable information to police.

### C. The Warrant Was Supported by Probable Cause at the Time of Execution.

Installing a GPS tracking device on a target's vehicle is a "search" under the Fourth Amendment, as is the use of such a device to monitor a vehicle's movement. See United States v. Jones, 565 U.S. 400, 404 (2012). GPS vehicle monitoring therefore "generally requires a warrant." Brewer, 915 F.3d at 413. The Government argues that, since Defendant did not own the Mazda, he does not have standing to object to the search. However, standing to challenge a search requires only a "subjective and

objectively reasonable expectation of privacy." United States v. Walton, 763 F.3d 655, 658 (7th Cir. 2014).  An authorized driver of a car who uses the vehicle in a way that demonstrates that he understands the vehicle to be under his control has both a subjective and objective expectation of privacy.  See id. at 666 (holding that driver with a suspended license who nevertheless rented a car had a reasonable expectation of privacy because he had temporary possession of the vehicle and had authority, as a practical matter, to "exclude anyone from the vehicle").  Here, the owner of the Mazda was Defendant's girlfriend, who had authorized him to drive it during the months of April, May, and June 2019. See d/e 46-1.  Accordingly, Defendant does have standing to challenge law enforcement's installation and use of a tracking device on the Mazda.

A search performed pursuant to a valid warrant is presumptively valid.  Archer v. Chisholm, 870 F.3d 603, 613-14 (7th Cir. 2017).  A warrant is valid under the Fourth Amendment if the warrant: (1) is issued by a neutral and disinterested magistrate; (2) establishes probable cause that the evidence sought in the warrant will help to secure an arrest or conviction for a particular

offense; and (3) describes with particularity the place to be searched.  Id. at 614 (citing Dalia v. United States, 441 U.S. 238, 255 (1979)).

Here, Defendant argues that the warrant was invalid because the affidavit submitted by Inspector Brown was insufficient to establish probable cause.   An affidavit establishes probable cause when it "sets forth sufficient evidence to convince a reasonable person that a search will uncover evidence of the alleged crime." United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009) (citing United States v. Carmel, 548 F.3d 571, 575 (7th Cir. 2008)).  The determination of probable cause is a "practical, commonsense decision" in which the judge who issues a warrant takes "all of the circumstances set forth in the affidavit before him" into account. United States v. Sewell, 780 F.3d 839, 845 (7th Cir. 2015).  The issuing judge's finding of probable cause is afforded "great deference" on review and is upheld as long as the issuing judge "had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing."  United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010).  Accordingly, even "doubtful cases" are "resolved in favor of upholding the warrant."  United

States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000) (quoting
Spry, 190 F.3d at 835)

When an affidavit relies primarily on information obtained
from a confidential informant, as does the warrant affidavit in this
case, the existence of probable cause "turn[s] on the informant's
credibility." Bell, 585 F.3d at 1049.  The factors used for evaluating
the credibility of an informant are: (1) the extent to which police
have corroborated the informant's information; (2) the degree to
which the informant acquired his information through first-hand
observation; (3) the amount of detail provided; (4) the age of the
information provided; and (5) whether the informant appeared or
testified before the issuing judge.  Id.  No one factor in the probable
cause analysis is dispositive, and a strong showing on some factors
can make up for deficiencies elsewhere.  Id.  Additionally, the
omission from a warrant application of damaging information about
an informant's credibility weighs against the sufficiency of the
warrant affidavit.  See United States v. Musgraves, 831 F.3d 454,
460 (7th Cir. 2016).

The Government concedes that Inspector Brown should have
disclosed additional credibility information regarding the CS in the

affidavit, including information regarding the compensation expected by the CS and information regarding the CS's pending felony charge for a methamphetamine-related offense. However, the omission of such information is not fatal to a warrant affidavit's showing of probable cause where the informant's information is sufficiently detailed and corroborated. See Bradford, 905 F.3d at 504 (affirming finding of probable cause where informant's "information was fresh, firsthand, quite detailed, and corroborated"); United States v. Hancock, 844 F.3d 702, 705 (7th Cir. 2016) (affirming denial without Franks hearing of motion to suppress despite credibility omissions because informant's account was "richly detailed" and extensively corroborated).

Here, the omitted information regarding the informant's pending felony charge was relevant and damaging. See United States v. Clark, 935 F.3d 558, 564 (7th Cir. 2019) (including pending criminal charges against informant in list of omitted damaging credibility information). Two other omissions—the fact that the informant was promised money and "consideration in the prosecution of the CS's friends" for information regarding Defendant, and the fact that the informant may also have been led

to believe that police would refrain from charging the CS with possession of the small amount of methamphetamine found in the CS's residence in exchange for information—were relevant, damaging, and concededly known to police.  D/e 41, p. 14.   These omissions weigh against the sufficiency of the warrant affidavit. The existence of probable cause therefore depends on the showing the Government makes regarding the freshness and firsthand nature of the information provided by the CS and included in the warrant affidavit and on the level of detail and corroboration provided.  See Bradford, 905 F.3d at 504 (finding warrant facially valid despite omission of credibility information because informant's information was "fresh, firsthand, quite detailed, and corroborated").

The information that the CS provided about Defendant's alleged methamphetamine purchasing operation contained considerable detail.  The CS told police that Defendant had driven a white SUV to the St. Louis area multiple times in the past and would do so again, that the vehicle belonged to Defendant's girlfriend, and that Defendant was purchasing 2 or 3 ounces of methamphetamine on each trip for resale in Taylorville, Illinois.

The CS also told police that Defendant had been pulled over in the Mazda on Illinois Route 48 on one such trip and that police had found a starter pistol in his car.

Inspector Brown corroborated that Defendant's girlfriend owned a white SUV, as the CS had stated, by checking the license plate number of the Mazda parked in Defendant's driveway. The criminal history check that revealed Defendant's methamphetamine-related conviction and pending charge provided further corroboration. Finally, Inspector Brown corroborated the CS's story by speaking to Deputy Goebel about the encounter between Deputy Goebel and Defendant that took place on the side of Illinois Route 48 on April 21, 2019.

Deputy Goebel confirmed that Defendant was headed southbound on Illinois Route 48 in the Mazda when Deputy Goebel stopped Defendant near Spresser Street at 10:37 p.m. on April 21, 2019. Deputy Goebel also stated that Defendant had approximately $2,000 in cash and a starter pistol in the car with him and that the money was for purchasing a smoker. These details corroborate the CS's assertion that Defendant had been stopped by police in the Mazda and that Defendant had a starter pistol with him during the

stop.  Deputy Goebel's account also corroborates the CS's claim that prior to encountering police Defendant was headed to the St. Louis area to purchase 2 or 3 ounces of methamphetamine.

Taken together, the corroboration provided gives rise to a reasonable inference that Defendant was, as the CS asserted, traveling to purchase methamphetamine in the St. Louis area when he encountered Deputy Goebel.  Defendant's criminal history also has corroborative value.  See United States v. Olson, 408 F.3d 366, 372 (7th Cir. 2005) (holding that, while defendant's record of drug convictions alone could not corroborate informant's account, it contributed to the sum of corroborative evidence that cumulatively established probable cause).  Furthermore, Defendant's possession of a digital scale and sandwich bags with cut corners gives rise to a reasonable inference that Defendant was likely engaged in distributing drugs, as opposed to merely using methamphetamine, at the time of his 2017 arrest.  See, e.g., United States v. Hurn, No. 05-CR-85-S, 2006 WL 6105283, at *1 (W.D. Wis. June 23, 2006) (relating detective's statement that "baggie corners commonly are used to package drugs for resale"); United States v. Chavis, 429 F.3d 662, 670 (7th Cir. 2005) (holding evidence that defendant was

arrested while in possession of a digital scale, a "tool of the drug trade[]," admissible under Rule 404(b)).

Here, the inclusion of a number of relevant, specific, and corroborated details weighs in favor of probable cause. See United States v. Mullins, 803 F.3d 858, 863 (finding that the level of detail provided helped to establish probable cause where informant specified the race and alias of the target, specified the location of the apartment where the target stored his drugs, and gave the make, model, color, and license plate number of the car the target drove when delivering drugs).

The age of the inculpatory information contained in a warrant application is one factor that can weigh in favor of or against a finding of probable cause. United States v. Spry, 190 F.3d 829, 836 (7th Cir. 1999); see Musgraves, 831 F.3d at 460 (holding that search warrant lacked probable cause because information regarding eleven-month-old controlled buy from target was "simply too stale to justify a search for drugs and related items").

The CS's information regarding Defendant was delivered to police on May 21, 2019. The encounter between Deputy Goebel and Defendant occurred on April 19, 2019, and Defendant's most recent

trip to the St. Louis area had, according to the CS, occurred roughly two weeks before May 21, 2019. The warrant was executed on June 5, 2019, meaning that the information relied on was approximately four to six weeks old at the time of execution.

The Seventh Circuit has held that "passage of time is less critical when the affidavit refers to facts that indicate ongoing criminal activity." United States v. Harris, 464 F.3d 733, 739 (7th Cir. 2006) (quoting Spry, 190 F.3d at 836). In United States v. Pless, 982 F.2d 1118 (7th Cir. 1992), an anonymous informant told police that the target of a police investigation was making methamphetamine in the basement of his home. Id. at 1126. Although corroborated information established that the target in Pless had been engaged in making methamphetamine more than three months before, the Seventh Circuit found that the age of the corroborated information did not cause the affidavit to be "critically deficient" because the criminal behavior in question was ongoing. Id. Similarly, in this case the CS provided police with an uncorroborated present-tense assertion that "Donald Felton is traveling to the St. Louis, Mo. Area to purchase ICE methamphetamine" along with older corroborated information

regarding a past attempted trip to purchase methamphetamine.
D/e 42, p. 2.

Probable cause existed to believe that Defendant would travel
to the St. Louis area to buy methamphetamine in the Mazda
sometime within a few weeks or months of the execution of the
warrant on June 5, 2019.  See United States v. Sutton, 742 F.3d
770, 774 (7th Cir. 2014) ("While evidence of regularity may be
helpful to determine how long a CI's information will remain useful,
it is not a legal requirement. Instead, the affidavits must provide
enough information to lead a reasonably prudent person to believe
a search would be fruitful.").

The detailed nature of information provided to police by the CS
and the corroboration of many details of the CS's information by
police weigh heavily in favor of Judge Paisley's probable cause
determination.  Because the warrant affidavit sets forth a detailed
and extensively corroborated account of Defendant's scheme, the
Court finds that a substantial basis for a probable cause finding
existed when Judge Paisley issued the warrant on May 23, 2019,
and when the warrant was executed on June 5, 2019.

**D.    The Court Also Finds That the Good Faith Exception Applies to Prevent Suppression of the Evidence Seized by Law Enforcement.**

Law enforcement was entitled to rely in good faith on the issued search warrant.  The good faith exception to the exclusionary rule prevents the suppression of evidence "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984).  An officer's decision to obtain a warrant generates a presumption that he was acting in good faith. United States v. Calligan, No. 20-1817, 2021 WL 3447797, at *4 (7th Cir. Aug. 6, 2021).

**1.    Because Probable Cause Existed at the Time of the Warrant's Execution, Official Belief in Probable Cause Was Not Unreasonable.**

Defendant argues that the warrant affidavit was so lacking in probable cause that official belief in probable cause was objectively unreasonable.  "A defendant establishes unreasonable reliance if 'courts have clearly held that a materially similar affidavit previously failed to establish probable cause' or the affidavit is 'plainly deficient.'" Glover, 755 F.3d at 819 (quoting United States v. Woolsey, 535 F.3d 540, 548 (7th Cir.2008)).

In <u>United States v. Glover</u>, 755 F.3d 811 (7th Cir. 2014), police omitted damaging information regarding an informant's credibility from the affidavit submitted in support of a warrant application. 755 F.3d at 818.  The warrant affidavit in this case, however, differs from the affidavit in <u>Glover</u> in that Inspector Brown's affidavit omitted only some information relevant to the informant's credibility, included relatively extensive corroboration of the CS's information, and informed the issuing judge that "the CS has provided information which has proven to be reliable on a number of occasions."  D/e 42, p. 2.

In <u>Glover</u>, police omitted "<u>all</u> information about the informant's credibility," and the Seventh Circuit found that "[t]he <u>complete</u> omission of information regarding Doe's credibility is insurmountable, and it undermines the deference we would otherwise give the decision of the magistrate to issue the search warrant."  <u>Id.</u> at 814, 816 (emphasis added).  Here, by contrast, only some information was omitted from the warrant affidavit, which specified that the CS "has provided information which has proved to be reliable on a number of occasions" and "has a criminal history with a felony conviction for burglary."  D/e 42, p. 2.

Accordingly, this case is more like United States v. Hancock, 844 F.3d 702 (7th Cir. 2016), than Glover.  In Hancock, the Seventh Circuit affirmed the denial of a Franks hearing where an informant provided detailed and partially corroborated information regarding a suspect's drug sales and police omitted some but not all of the information they had about the informant's criminal history.  844 F.3d at 705.  The court in Hancock found that the omissions were not material because of the extensive corroboration provided.  Id. at 705–06.

Here, as in Hancock, the information provided by the CS is more detailed and has been more extensively corroborated than the information in Glover, while the affiant omitted only some, rather than all, of the information he had regarding the CS's criminal history and credibility.  The corroboration in Glover consisted of a criminal record check on the suspect and a confirmation that the suspect lived at the address mentioned by the informant.  755 F.3d at 817.  In this case, by contrast, the CS provided a detailed account of a recent encounter between Defendant and the police, which Inspector Brown fully corroborated by speaking with Deputy Goebel.

Furthermore, the court in <u>Glover</u> observed that there was a chance that the informant was motivated to turn the defendant in by "gang rivalries." <u>See</u> <u>id.</u> at 817; <u>see also</u> <u>Bell</u>, 585 F.3d at 1050 (7th Cir.2009) (finding that, where affidavit did not indicate whether informant had provided information to law enforcement in the past, possibility that informant was a rival drug dealer trying to remove competition weighed against validity of warrant).

Finally, the warrant affidavit in this case, unlike the affidavit in <u>Glover</u>, informed the issuing judge that the CS had provided reliable information to police on several past occasions.

## 2.   **<u>Defendant Is Not Entitled to a Franks Hearing.</u>**

Defendant also argues that he is entitled to a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  A defendant is entitled to a <u>Franks</u> hearing if he makes a "substantial preliminary showing" that the warrant affidavit contained false statements or omissions and that those statements or omissions were necessary to the finding of probable cause and were made intentionally or with reckless disregard for the truth.  Here, the Government admits that Inspector Brown omitted relevant information regarding the CS's credibility but denies that the

omissions were intentional or reckless or material to the probable cause finding.

A substantial preliminary showing as to the intentionality or recklessness of omissions requires either "direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had a subjective intent to deceive based on the nature of the omissions." <u>Glover</u>, 755 F.3d at 820.  This evidence "must show that the officer submitting the complaint perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the allegations." <u>United States v. Woodfork</u>, 999 F.3d 511, 518 (7th Cir. 2021) (quoting <u>United States v. Johnson</u>, 580 F.3d 666, 670 (7th Cir. 2009)).  This is a "substantial" burden, and <u>Franks</u> hearings are rarely required.  <u>Johnson</u>, 580 F.3d at 670.

In <u>Glover</u>, the Seventh Circuit held that omissions regarding the informant's credibility provided sufficient circumstantial evidence of recklessness in and of themselves to entitle the defendant to a <u>Franks</u> hearing.  <u>Id.</u>  However, credibility omissions in a warrant affidavit "do not *require* courts to infer recklessness." <u>Clark</u>, 935 F.3d at 566 (7th Cir. 2019).  Rather, such omissions

should be analyzed along with any other available state-of-mind evidence by the trier of fact.  Id.

This case is distinguishable from Glover, again, because police did include credibility information regarding the informant and because police corroborated many of the details in the CS's account.  See Mullins, 803 F.3d at 864 (affirming denial of Franks hearing despite credibility omissions and distinguishing Glover because affidavit in Glover was "minimally corroborated"); Hancock, 844 F.3d at 709–10 (affirming denial of Franks hearing and distinguishing Glover because the specific credibility concerns in Glover regarding rival gang membership did not apply and because informant's information was detailed, specific, and corroborated).

The inclusion of credibility information also distinguishes this case from United States v. Clark, 935 F.3d 558 (7th Cir. 2019).  In Clark, as in this case, the informant was "the only source of information" who said that the defendant was actually dealing drugs, and the informant's information was "only second-hand."  Id. at 567.  The Seventh Circuit found that credibility omissions in the warrant affidavit in Clark were material and created a reasonable inference that the affiant was being dishonest or reckless and that a

<u>Franks</u> hearing was required.

But in <u>Clark</u>, as in <u>Glover</u>, the Seventh Circuit emphasized the fact that the "warrant application did not include *any* of the substantial adverse information [the police affiant] had about the informant's credibility." <u>Clark</u>, 935 F.3d at 565 (distinguishing <u>Hancock</u> because <u>Hancock</u> involved extensive corroboration and the omission of some but not all of the adverse informant credibility information).  Inspector Brown's warrant affidavit mentions the CS's "criminal history with a felony conviction for burglary," as well as the CS's history of providing reliable information to police. Inspector Brown did not portray the CS as a concerned civilian with no connection to the drug trade.  Accordingly, the Court finds that Defendant has not met the demanding standard for rebutting the presumption of good faith that arose when Inspector Brown sought a warrant.  <u>See</u> <u>United States v. Ware</u>, No. 20-3264, 2021 WL 3486182, at *3 (7th Cir. Aug. 9, 2021).

Defendant asserts that, in addition to the omissions of relevant CS credibility information, Inspector Brown's affidavit contained a material misrepresentation regarding the April 2019 "traffic stop" in which police claim Defendant was "pulled over" with

approximately $2,000 in cash and a starter pistol in his car while headed southbound on a highway running between Taylorville and the St. Louis area.  Defendant asserts in his Reply brief that police records show that he was not "pulled over" but that his vehicle was "already seemingly in an idle position adjacent to the roadway when the officer engaged him for an incident that fell within the category of a 'disabled/abandoned' vehicle incident."  D/e 46, p. 10.  However, Defendant's version of events, if substantiated, would not affect the Court's probable cause finding.

To secure a <u>Franks</u> hearing, a defendant bears the burden of making a substantial preliminary showing that the challenged intentional or reckless false statements were "material to the finding of probable cause."  <u>Mullins</u>, 803 F.3d at 861-62 (7th Cir. 2018).  To make such a showing, a defendant must furnish "an offer of proof." <u>Franks</u>, 438 U.S. at 171.  This requires that "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."  <u>Id.</u>  Here, three individuals—Defendant, an associate of Defendant's named Jason Malone, and Deputy Goebel—were present at the stop or "vehicle incident" in question, and Defendant has not produced any reliable

statement from any of these parties as to what occurred during the April 21, 2019, encounter.  Accordingly, the Court finds that Defendant has not made a substantial preliminary showing that any falsehood or omission regarding the nature of the April 2019 encounter was material to Judge Paisley's finding of probable cause.

**E.    Defendant Is Not Entitled to an Evidentiary Hearing.**

In addition to requesting suppression of the evidence or a Franks hearing, Defendant also requests an evidentiary hearing to "further develop facts."  D/e 46, p. 13.  However, an evidentiary hearing on a motion to suppress is "not a matter of course" and is required only when "there are disputed issues of material fact that will affect the outcome of the motion."  United States v. Edgeworth, 889 F.3d 350, 353 (7th Cir. 2018) (quoting United States v. Curlin, 638 F.3d 562, 564 (7th Cir. 2011).  Here, Defendant has not identified any disputed issues of material fact that might affect the outcome of his Motion.  To the extent that Defendant has asserted that the Mazda was not stopped by police but was instead parked on the side of Illinois Route 48 when Deputy Goebel approached him, a finding by the Court on this point would not affect the

outcome of Defendant's motion.

### III. CONCLUSION

For the reasons stated, Defendant Donald Felton's Motion to Suppress Evidence and/or Request for a Hearing Pursuant to Franks v. Delaware (d/e 36) is DENIED.


ENTER:  August 23, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE