In the United States District Court
Central District of Illinois
Springfield Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19-cr-30035 |
| | ) |
| Donald Felton, | ) |
| Defendant, | ) |

Omnibus Motion to Suppress the Evidence AND Supplement the Record AND Reconsider Prior Ruling Under Rule 59(e).

Now comes Donald Felton, pro se, and for my Omnibus motion to suppress, and supplement the record and to reconsider oppression under Rule 59(e) states to this honorable court the following:

1.) On April 23rd, 2021 defendant's attorney filed a motion to suppress (incorporated herein the instant motion). Mr. Wykoff wanted to adopt my pro se filing (filed/stricken in Feb 2021) as his own but was told by the government that he couldn't do that.

2.) On August 23rd, 2021 the honorable Sue Myerscough issued an opinion (incorporated herein the instant motion) on the motion to suppress.

3.) During the course of the initial motion I was sending caselaw and arguments to Mr. Wykoff because I know he was very busy. It was difficult to get him on the phone and he sometimes wasn't able to respond to my correspondence.

4.) There are a number of additional arguments that I don't want forfeited for review and need the district court to make

a ruling on. The Kiosk quit working at the jail and wasn't replaced for six plus weeks so I was handicapped in being able to send my research to Mr. Wykoff. By the time they replaced the Kiosk the initial motion to suppress had already been briefed.

5) I don't fault Mr. Wykoff for the oversight nor do I feel it would be proper for me to be prejudiced as a result. The additional arguments to supplement the Record have a basis in law and fact and consists of the following.

## Memorandum of Law in Support of Supplementing the Record

The affidavit used in support of obtaining the GPS tracking device has additional problems based upon established appellate precede. For example in Peck 317 F.3d 754 @ 756 the 7th circuit held that there was "insufficient evidence to support a finding of probable cause because" informants "statement lacked sufficient detail and there was no independent police corroboration." "Although Doe claimed she personally observed drugs in Peck's house less than two days before the search warrant was executed and she appeared before the issuing judge, these elements are not enough to overcome the minimal amount of detail given... Doe failed to give specific details about the drugs... such as where the drugs were hidden, the total amount of drugs Peck possessed, or the frequency with which Peck sold drugs." Like in Peck ID at 756 the informant here, Randall Smith, alleges I bring meth to Taylorville to be sold. He provides no details about packaging, pricing, quantities, locations, customers, geographical distribution nor any operating information. He himself doesn't even claim to have bought meth from nor even seen meth in my possession. "The affidavit further

failed to explain why Doe knew that the substance in question was
an illicit drug, another way to show reliability. In ... Johnson 289
F.3d 1034 although the CI's affidavit did not provide the level
of specificity needed, we found that the CI's statements that
Johnson possessed cocaine were reliable because the CI made statements
against her interest Id at 1036. Peck at 757 "this indicium of
reliability is missing from Doe's affidavit." "Thus the minimal
amount of detail in Doe's affidavit does not support a finding
of probable cause." "The warrant issued by the judge was barebones"
Peck at 758 "the police did not take the steps that we require
to demonstrate probable cause." In Mykytiuk 402 F.3d 773, 777-78
the informant provided some details and officers provided some minimal
corroboration. Just like here and yet the 7th Circuit still held
it was an insufficient affidavit. The 7th Circuit's position on
affidavits and probable cause isn't static nor is it contingent on
any single case. But if you carefully review their position using
many cases you can see the evolution of binding appellate precedent.
See Koerth 312 F.3d 862, 867-70, Peck 317 F.3d 754, Bell 585
F.3d 1045, 1050-52, Mykytiuk 402 F.3d 773, 777-78, Owens 387
F.3d 1007, Olson 408 F.3d 366, 370, Martin 807 F.3d 842, 847-48,
Searcy 664 F.3d 1119, 1122, 1125, Thompson 801 F.3d 845, 848-49,
Johnson 289 F.3d 1034, 1038-40, Patton 962 F.3d 972, 973,
Fairchild 940 F.2d 261, 264-265. The 7th circuit, just based upon
`Koerth`, `Peck`, `Bell`, and `Mykytiuk` would find this affidavit insufficient
to establish probable cause. Unlike in Mykytiuk where law enforcement
only had 6 months since the Koerth decision most of the above cited
cases are over a decade old. If law enforcement are going to work
jointly with federal authorities they have a responsibility to learn and

know appellate precedent Bell 585 F.3d 1045 @ 1050-53. If previous similar affidavits have been found to fail in meeting the probable cause standard there is no good faith. This case would be appropriate for suppression to further the purpose of the exclusionary rule. If law enforcement haven't learned appellate precedent from 20 yrs ago, in some of these cases, suppression remains the appropriate remedy, to deter future violations. This affidavit was based on uncorroborated, conclussory info. There isn't any piece of evidence that would signify some sort of illegal conduct, in drugs sales or even possession.

The informant was out on multiple bonds for meth covering multiple counties at the time of the warrant application. This was intentionally left out of the affidavit and would have undermined the informants accusations. As of this filing the government has still not provided a complete NCIS/LEADS criminal history printout. Not only would it be supportive of this filing, it's discoverable through Brady for its impeachment purposes. Not just on Randall Smith but on law enforcement.

Law enforcement didn't just violate my right to be free from unreasonable searches and seizures under the 4th amendment but my rights to due process under the 5th and 14th amendments. See Mapp v. Ohio 367 US 643, 685, Weeks 232 US 383. This is an appropriate case because the facts it presents show -- as would few other cases -- the casual arrogance of those who have the untrammelled power to invade one's home and to seize one's person." 367 US at 671. Mr. Wykoff and I have demonstrated ① the issuing judge did not have a substantial basis to find probable cause `Leon` 468 US at 915 quoting `Gates` 462 US at 239 ② the officer was dishonest or reckless in preparing the affidavit `Leon` 468 US 867 at

23. And that the affidavit was clearly lacking indicia of probable cause based upon the cases and appellate precedent cited above.

Not only did law enforcement misrepresent the disabled/abandoned vehicle situation, they also misrepresented an encounter resulting in case number 17-cf-77 in the GPS affidavit. Inspector Brown claims he seen baggies with the corners removed and a scale implying drug trafficking. The pictures however show paraphernalia for the purpose of using drugs. It shows 1 baggie with a corner missing. I did weigh my stuff to ensure it was right and I'd even break down my supply so as to regulate and control what I was "allowed" to consume in a day or weeks time. Nobody has ever claimed to have purchased narcotics from me. I use narcotics. This is no secret.

As an electronic surveillance tool (50 USC 1801 (f)(4)) law enforcement must make a complete and full statement on necessity. Inspector Jeff Brown states, "Based on training and experience it is anticipated due to the public's knowledge of what covert vehicles are commonly used within this county and the open areas and rural terrain the vehicle is anticipated to travel that it would be impossible to follow by traditional surveillance methods. Thus, other investigative procedures appear unlikely to succeed if tried." First of all, the public does not have knowledge of what covert vehicles are used for surveillance. Secondly, law enforcement didn't have any real reason to believe that illegal activity was taking place. They had information from an informant who was no stranger to making controlled buys and participating in phone calls yet couldn't provide any proof of his allegations. To fulfill the necessity requirement not only do you have to meet the normal 4th amendment requirements of probable cause you must also jump the additional hurdles that congress placed in the way of a too permeating police surveillance. Congress intended

to strictly regulate electronic surveillance. The Necessity Requirement creates it's own remedy for suppression. These tools are extraordinary tools that congress didn't want to become first stop in an investigation. Here is a list of some traditional tools/methods that were not tried and failed and no logical reason exists to explain why they were believed to fail or why they were believed to be too dangerous to attempt. ① confidential informants ② other corroborating witnesses ③ controlled drug purchases ④ consensual call recordings ⑤ monitored calls ⑥ physical surveillance ⑦ consensual overheard calls ⑧ pole cameras ⑨ trash pulls ⑩ telephone records ⑪ text messages ⑫ FB messages/messenger ⑬ other social media, this list isn't exhaustive but it demonstrates many traditional investigative options, None of which were used. The only investigation consisted of discovering evidence that undermined the credibility of the informant, the fabrication of a corroborating statement from Goebel, and the misrepresentation concerning 17-cf-77. Then law enforcement omitted to bonds that Randall Smith was out on bond for which should have subjected him to a heightened level of scrutiny. He didn't make any statements against his own penal interest.

## Memorandum of Law in Support of Reconsideration per Rule 59(e)

Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." Miller v. Safeco Ins. Co of Am. 683 F.3d 805, 813. A court should alter or amend it's judgement under rule 59(e) only if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact."

A manifest error occurs when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." Burritt v. Ditlefsen 807 F.3d 239, 252-253. The district court relies upon Brewer 915 F.3d 408, 414 as authoritive concerning the 96hr. statute violation. Reliance on Brewer is misplaced and inapposite to the instant case. Brewer had a valid warrant that was executed on-time within congressional legal framework. Violating a provision within a valid warrant that precluded the use of the device across state lines is not the same as violating congressional statute. See 725 ILCS 5/108-6 which clearly states "ANY warrant not executed within such time SHALL BE VOID." The Supreme Court held in INS v. Cardoza-Fonseca 480 US 421, 452 "In interpreting a statute a court should always turn first to one, ordinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Since an actual statute voided the warrant, law enforcement never had a valid one, when they attached a tracking device.

Brewer also doesn't allege officers committed perjury within the affidavit in violation of his due process rights enshrined in the 5th and 14th amendments, when seeking the warrant. The court's opinion says there is no "brightline rule" governing federal tracking devices. The "10 day rule" was established in Sgro 287 US 206, 212 and reaffirmed in Jones v. Kirchner 835 F.3d 74 at 85. These courts have memorialized the 10 day rule for decades. That's why the government couldn't argue against a timliness issue in Antoine Jones that decided you had to have a warrant. They could only argue one wasn't even needed. Misapprehending the law is by definition an abuse of discretion. Koon 518 us 81, 100.

Concerning the 96hr. rule, 10 day rule, necessity requirement, the constitution, and settled case law, "There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is substantial public interest in having governmental agencies abide by the... laws that govern their existence and operations. Newby 838 F.3d 1, 12

## Memorandum of Law in Support of Necessity Requirement

Brown uses "boiler plate" verbage on necessity in his affidavit for a tracking device. These are some cases pertaining to necessity. US v. Ailemen 986 F.Supp 1228, 1231-32, US v. Glover 681 F.3d 411, 420, 401 US. App. D.C. 80, US v. Becton 601 F.3d 588, 596, 390 U.S. App. D.C. 1107, US v. North 728 F.3d 429, 440, Koyomejian 946 F.2d 1450, 1453-57, Gray 410 F.3d 338, 343, Wright 635 Fed. Appx. 162, Maggard 865 F.3d 960, 966, Mandell 833 F.3d 816, 821, Kahn 415 US 143, 153n, Carter 449 F.3d 1287, 1293, Williams 580 F.2d 578, 588

## Memorandum of Law in Support of Omnibus Motion to Suppress

I titled this as an Omnibus Motion to suppress to include the previous motion to suppress, additional arguments, reliability of the dog alert and motion to reconsider in light of everything on the record.

Under Illinois Congressional statute a K-9 used for drug detection must be certified to do so. Evidence of certification is in the form of a certificate from the Illinois Law Enforcement Training and Standards Board. See 20 ILCS 2605/2605-95, 50 ILCS 705/10.12

There is another case in the 7th Circuit presided over by the honorable Sue Myerscough Eyman 962 F.3d 273 that raised a similar argument but the court found the record clearly demonstrated that K-9 was reliable. He'd previously been certified multiple times and the handler had extensive training records/logs and deployment sheets. The K-9 was a veteran drug detection dog and his alert could be relied upon.

The K-9 "Kairo" in the instant case had never been properly certified until 07/08/2019. "Kairo" was obtained from an out of state kennel and was never properly tested under Illinois law. If a K-9 has never been tested the officer can't claim to have relied upon his alert. Officer Alwerdt didn't use any K-9 deployment sheets until Jan. of 2020. "Kairo" was purchased in 08/ of 2018. There are also no training logs available. I was arrested in 06/08/2019 after an "alert" The statutes are unambiguous concerning the required certification. See INS v. Cardoza-Fonseca 480 US 421, 452, Stanbridge 813 F.3d 1032.

The government can't argue inevitable discovery because I happened to be parked on private property, of close family members. Even if I would have been transported to jail my vehicle would have been left in the driveway. Law enforcement couldn't have towed it as it was legally parked. I've included a copy of the Christian County tow policy therefore my vehicle wouldn't have been subjected to a lawful inventory search either.

50 ILCS 705/10.12 Police Dog training standards. All police dogs used by State and local law enforcement agencies for drug enforcement purposes pursuant to the Cannabis Control Act, the Illinois Controlled Substances Act, or the Methamphetamine Control and Community Protection Act

shall be trained by programs that meet the minimum certification requirements set by the Board.

20 ILCS 2605/2605-95 Training; police dog training standards. Beginning July 1, 2012, all police dogs used by the department for drug enforcement purposes pursuant to the Cannabis Control Act (720 ILCS 550/), the Illinois Controlled Substances Act (720 ILCS 570/), and the Methamphetamine Control and Community Protection Act (720 ILCS 646/) shall be trained by programs that meet the certification requirements set by the Director or the Director's designee. Satisfactory completion of the training shall be evidenced by a certificate issued by the Department.

Wherefore I, Donald Felton, respectfully prays this Honorable Court, for the reasons set forth in this filing in conjunction with the initial motion to suppress enter an order suppressing the evidence obtained thru the 4th, 5th, and 14th amendment violations and/or grant a hearing.

Respectfully Submitted,

Donald Felton